IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES CHANCE RICHIE, SHALEWATER SOLUTIONS, LLC and SHALEAPPS, LLC<br><br>Plaintiffs,<br><br>v.<br><br>HILLSTONE ENVIRONMENTAL PARTNERS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 19-649-RGA-SRF<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this diversity action is the motion to dismiss for failure to state a claim filed by defendant Hillstone Environmental Partners, LLC ("Hillstone"). (D.I. 25) For the following reasons, I recommend that the court grant the motion to dismiss, and dismiss the complaint with prejudice.

### II. BACKGROUND

On November 19, 2015, James Chance Richie, Shalewater Solutions, LLC, and ShaleApps, LLC (collectively, "plaintiffs") entered into an Asset Purchase Agreement ("APA") with Hillstone for the sale of a business that provided environmental management services to the oil and gas industry (the "Business"). (D.I. 1 at ¶ 8) Pursuant to the APA, Mr. Richie sold Shalewater Solutions, LLC and ShaleApps, LLC to Hillstone for a fixed purchase price to be paid on the closing date in 2015. (*Id.* at ¶¶ 8-9) The APA further requires Hillstone to pay plaintiffs Earnout Payments for the calendar years ending 2016, 2017, and 2018, to be calculated based on Hillstone's earnings during those years. (*Id.* at ¶¶ 9-10)

In accordance with the terms of the APA, Hillstone delivered the 2016 and 2017 Earnout Statements to plaintiffs by March 31, 2017 and March 31, 2018, respectively. (*Id.* at ¶¶ 11-12; D.I. 26, Ex. 1 at § 2.7(a)[1]) The 2016 and 2017 Earnout Statements represented that Hillstone generated a loss and, consequently, no Earnout Payment was due in those years. (D.I. 1 at ¶ 12) Plaintiffs did not review the materials used in preparing the 2016 and 2017 Earnout Statements, nor did they challenge the accuracy of the 2016 and 2017 Earnout Statements within the thirty-day window for delivering an Earnout Dispute Notice, in accordance with § 2.7(b) of the APA. (D.I. 26, Ex. 1 at § 2.7(b)) After receiving more data related to the 2018 Earnout Statement, plaintiffs began to suspect that there were material misrepresentations or miscalculations in the 2016 and 2017 Earnout Statements. (D.I. 1 at ¶ 13) On or about November 2, 2018, plaintiffs made a formal written request for the underlying documentation forming the basis of the 2016 and 2017 Earnout Statements, but Hillstone declined to provide the documentation. (*Id.* at ¶ 14)

Plaintiffs filed the instant litigation on January 22, 2019 in the Western District of Texas, asserting a cause of action for fraud. (D.I. 1 at ¶¶ 18-19) On February 20, 2019, Hillstone filed a

---

[1] On a motion to dismiss pursuant to Rule 12(b)(6), the court may consider the complaint and documents referenced in or attached to the complaint. *See In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider 'document[s] integral to or explicitly relied upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document,' *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)."). In the present case, Hillstone has attached the APA as an exhibit to the motion to dismiss. (D.I. 26, Ex. 1) Plaintiffs' complaint describes the contents of the APA, including its discussion of Earnout Statements and Earnout Payments in § 2.7. (D.I. 1 at ¶¶ 8-19) Plaintiffs do not challenge the authenticity of the APA attached to Hillstone's motion to dismiss. The court may consider the APA without converting the motion to dismiss to a motion for summary judgment because the APA is "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

motion to transfer the case to the District of Delaware, which was granted on April 8, 2019. (D.I. 10; D.I. 16) The case was subsequently transferred to this court on April 9, 2019. (D.I. 17)

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

Allegations of fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016). Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." This heightened pleading standard was meant to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of . . . fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Accordingly, the complaint must provide "all of

3

the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when where and how' of the events at issue." *Whatley*, 657 F. App'x at 93 (quoting *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002)). "The use of boiler plate and conclusory allegations will not suffice." *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012) (internal quotation marks and citations omitted).

## IV.  DISCUSSION

### A.  Nature of the Claim

In support of its motion to dismiss, Hillstone contends that plaintiffs' fraud claim is barred by the express terms of the APA, which provides a binding procedure for addressing plaintiffs' allegations of material misrepresentations in the 2016 and 2017 Earnout Statements. (D.I. 25 at 5) According to Hillstone, plaintiffs' fraud claim is based on a violation of Hillstone's contractual duty to provide Earnout Statements, and Hillstone had no independent legal duty to deliver the Earnout Statements or to allocate expenses among affiliates in a particular way. (*Id.* at 7-8; D.I. 29 at 4) Hillstone further alleges that plaintiffs' fraud claim is barred under the economic loss doctrine because the damages sought by plaintiffs are the same damages permitted under the APA. (D.I. 25 at 9; D.I. 29 at 4-5)

In response, plaintiffs contend that the alleged fraud is independent of the APA because the fraud claim is based on plaintiffs' reliance on the 2016 and 2017 Earnout Statements, which were made after the execution of the APA. (D.I. 28 at 6) Plaintiffs contend that the 2016 and 2017 Earnout Statements induced them to waive their contractual rights to examine and challenge the veracity of those same Earnout Statements. (*Id.*) Plaintiffs acknowledge that a breach of contract claim would have been barred under the thirty-day window set forth in the

4

APA for challenging the Earnout Statements. (*Id.* at 8-9) However, plaintiffs contend that it would be speculative to conclude that fraud damages are a rehash of breach of contract damages until the nature and extent of any misrepresentations is revealed. (*Id.* at 9)

I recommend that the court dismiss plaintiffs' complaint, which alleges that Hillstone's 2016 and 2017 Earnout Statements contained fraudulent misrepresentations. (D.I. 1 at ¶ 12) The APA outlines a comprehensive procedure for identifying and remedying inaccuracies in the Earnout Statements in a timely manner. Section 2.7(a) of the APA provides that Hillstone is contractually obligated to prepare and deliver Earnout Statements for the years 2016, 2017, and 2018, setting forth Hillstone's calculation of Business earnings during those years. (D.I. 26, Ex. 1 at § 2.7(a)) The APA states that plaintiffs shall coordinate with Hillstone to review the Earnout Statements, and Hillstone must "provid[e] the Sellers and their accountants reasonable access during business hours to materials (including accountants' work papers) used in preparation of such Earnout Statement." (*Id.* at § 2.7(b)) The complaint alleges that Hillstone timely provided its Earnout Statements to plaintiffs, but represents that plaintiffs did not attempt to exercise their contractual right to review the materials used in the preparation of those Earnout Statements until November 2, 2018, long after the thirty-day window for challenging the accuracy of the Earnout Statements had expired. (D.I. 1 at ¶¶ 12, 14; D.I. 26, Ex. 1 at § 2.7(b)) Under these circumstances, allowing plaintiffs' fraud claim to proceed would effectively nullify the limited review period at § 2.7(b) of the APA. Plaintiffs' proposed supplementation or amendment of the pleading would be futile because plaintiffs do not dispute the fact that they did not challenge the accuracy of the Earnout Statements within thirty days in accordance with § 2.7(b) of the APA.

To the extent that plaintiffs allege Hillstone diverted Business earnings to other companies and charged improper expenses to the Business, thereby adversely affecting Business

5

earnings for 2016 and 2017, the APA expressly contemplates such a scenario and provides a procedure to make plaintiffs whole again. (D.I. 1 at ¶ 13; D.I. 26, Ex. 1 at § 2.7(h)) Specifically, the APA provides that if Hillstone "takes any action in the operation of the Shalewater Businesses with the primary intent of reducing Adjusted EBITDA . . . without reasonable business justification therefor," Hillstone must compensate plaintiffs for the amount that would have been paid if such action had not been taken by Hillstone. (*Id.* at § 2.7(h)) Although plaintiffs allege that they "did not contract away their rights to assert a tort claim such as fraud," (D.I. 28 at 9 n.2), § 2.7(h) expressly provides that plaintiffs' "sole recourse in respect of any such action shall be the payment of the incremental amounts (if any) payable pursuant to this Section 2.7(h)," (D.I. 26, Ex. 1 at § 2.7(h)).

Plaintiffs' fraud claim is also barred by the economic loss doctrine, which generally prohibits recovery in tort for economic harm. *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012). The underlying purpose of the economic loss doctrine is to "prevent[] tort law from reallocating risks between parties who fairly have negotiated an arms-length contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 679 (3d Cir. 2002). In the present case, plaintiffs seek the recovery of monetary damages mirroring the relief permitted under § 2.7(e) of the APA. (*Compare* D.I. 1 at ¶ 21 *with* D.I. 26, Ex. 1 at § 2.7(e)) Specifically, the complaint seeks a judgment against Hillstone for all actual, consequential, and incidental damages, as well as pre- and post-judgment interest and costs. (D.I. 1 at ¶ 21) Sections 2.7(d) and (e) require Hillstone to compensate plaintiffs for any inaccuracies in the Earnout Statements in accordance with the determination by an independent accounting firm, including interest. (D.I. 26, Ex. 1 at § 2.7(d)-(e)) Section 2.7(d) further provides for the allocation of costs. (*Id.* at § 2.7(d))

6

Although fraudulent inducement is a recognized exception to the economic loss doctrine, the exception does not apply where, as here, the fraud claim relates to the performance under the contract, as opposed to inducement of the contractual relationship. *See Brasby v. Morris*, 2007 WL 949485, at *7 (Del. Super. Ct. Mar. 29, 2007) ("Allegations of fraud that go directly to the inducement of the contract, rather than its performance, would present a viable claim."). Plaintiffs concede that the alleged misrepresentations did not induce them to execute the APA, but rather induced them to "waive their contractual rights" under the APA. (D.I. 28 at 6) The fraud alleged by plaintiffs in the present case relates exclusively to the 2016 and 2017 Earnout Statements, which were delivered after the execution of the APA. (D.I. 1 at ¶ 12) Consequently, the fraudulent inducement exception to the economic loss doctrine does not apply.

### B.  Sufficiency of the Pleading

Hillstone contends that the complaint fails to adequately plead a misrepresentation under Rule 9(b) because plaintiffs had a contractual right under the APA to review the facts underlying Hillstone's alleged misrepresentations. For this reason, Hillstone alleges that the facts were not peculiarly within its possession and control. (D.I. 25 at 10) Hillstone further alleges that the complaint fails to specify which language in the Earnout Statements may have been false, or whether the Business's 2016 and 2017 performance was worse than its performance in 2014, 2015, and 2018. (*Id.* at 11) According to Hillstone, the complaint does not identify particular portions of the Earnout Statements relied upon by plaintiffs in waiving their contractual rights to review and challenge the accuracy of the Earnout Statements. (*Id.* at 12)

In response, plaintiffs allege that they relied upon the Earnout Statements provided by Hillstone as the basis for the 2016 and 2017 Earnout Payments, but they discovered that the Earnout Statements contained false information after having waived their rights to review and

7

challenge the Earnout Statements. (D.I. 28 at 10-11) Plaintiffs further allege that they are not obligated to plead the relevant facts with particularity where, as here, the facts are peculiarly within Hillstone's control. (*Id.* at 11)

Plaintiffs' complaint fails to sufficiently allege a misrepresentation and reliance on the misrepresentation to satisfy the Rule 9(b) standard in the present case. To state a claim for fraud under Delaware law, a plaintiff must allege that: "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).[2] The complaint provides that "[n]either the 2016, nor the 2017, Earnout Statements provided sufficient background or detail to enable Sellers to make an informed decision regarding the amounts shown and calculations claimed," but the receipt of data related to the 2018 Earnout Payment caused plaintiffs to suspect "that there may have been material misrepresentations or miscalculations due to Business earnings diverted to other companies

---

[2] During oral argument on July 9, 2019, counsel for plaintiffs cited the Court of Chancery's decision in *Abry Partners V, L.P. v. F&W Acquisition LLC* in support of plaintiffs' position that the claim for fraud is not precluded by the terms of the APA. However, *Abry* is distinguishable from the facts presently before the court because the pleading in *Abry* alleged with specificity "what financial statements were materially false and why they were false," and the accuracy of the financial statements was warranted in the contract itself. 891 A.2d at 1051. In contrast, the APA before the court in this matter places the burden on plaintiffs to investigate and verify the accuracy of the Earnout Statements. Plaintiffs' counsel relied on *Abry* for the principle that, "[i]f there is a public policy interest in truthfulness, then that interest applies with more force, not less, to contractual representations of fact." *Id.* at 1057. However, this analysis in *Abry* related to a claim for fraudulent inducement, which is distinguishable from the claim of fraud asserted in the instant pleading for the reasons discussed at § IV.A, *supra*.

8

and/or improper expenses charged to the Business which adversely affected Business earnings for 2016 and 2017." (D.I. 1 at ¶¶ 12-13) Consequently, plaintiffs allege "on information and belief that the representations and calculations in the Earnout Statements delivered for 2016 and 2017 may have been false and the facts are peculiarly within the possession and control" of Hillstone. (*Id.* at ¶ 16)

Plaintiffs acknowledge that allegations based on information and belief are insufficient to satisfy the Rule 9(b) particularity standard unless the information is uniquely in the control or possession of the defendant. (*Id.* at ¶ 15) However, the APA expressly permits plaintiffs to review the documentation underlying the Earnout Statements. (D.I. 26, Ex. 1 at § 2.7(b)) Plaintiffs have not sufficiently explained how the information necessary to plead their claim lies exclusively within Hillstone's control, when the APA explicitly grants plaintiffs access to this information within the negotiated time frame. *See Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 646 (3d Cir. 1989) ("[P]laintiffs must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control.").

Moreover, the complaint does not identify with specificity the portions of the 2016 and 2017 Earnout Statements relied upon by plaintiffs in waiving their rights under the APA to review the materials underlying the Earnout Statements, and to raise any disputes with respect to the Earnout Statements within a thirty-day time frame. (D.I. 26, Ex. 1 at § 2.7(b)) Instead, the complaint broadly alleges that "[t]he Earnout Statements, and representations therein, were relied upon by Richie to waive certain rights under the Asset Purchase Agreement." (D.I. 1 at ¶ 12) These allegations are insufficient to satisfy the particularity requirement of Rule 9(b). *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778-79 (3d Cir. 2018) (concluding that "[i]t is

9

not enough simply to assert that a statement was 'fraudulent' and that reliance upon it induced some action." (internal citations omitted)).

## V. CONCLUSION

For the reasons discussed above, I recommend that the court grant Hillstone's motion to dismiss, and dismiss the complaint with prejudice. (D.I. 25)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 9, 2019

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE